We granted the petition of Sonat, Inc., for the writ of certiorari to review the judgment of the Court of Civil Appeals. The Jefferson Circuit Court had ordered the Alabama Department of Revenue (the "Department") to set aside its final assessment of Alabama corporate income tax against Sonat for the calendar year 1988 and to refund $12,153,702, plus interest, in Alabama corporate income tax collected from Sonat. The Court of Civil Appeals reversed that judgment. Alabama Dep't of Revenue v.Sonat, Inc., [Ms. 2960274, May 2, 1997] 752 So.2d 1206, (Ala.Civ.App. 1997). We reverse the judgment of the Court of Civil Appeals and remand.
At issue is the interpretation of Ala. Code 1975, § 40-18-35(a)(14), which permits a corporation, in computing its net income, to deduct dividends received from certain affiliated corporations. For the tax year 1988, § 40-18-35(a)(14) provided in pertinent part:[1]
 "(a) . . . In computing the net income of foreign corporations doing business in this state subject to the tax imposed by section 40-18-31, there shall be allowed as deductions the items described in the following numbered subdivisions of this section, but only if, and to the extent that, such items are referable to or arise in connection with income of such corporations arising from sources within the State of Alabama. . . . Subject to the limitations contained in the preceding *Page 1212 
sentence, there shall be allowed as deductions in computing the net income of corporations:
". . . .
 "(14) . . . [T]he amounts received after December 31, 1968, as dividends, including liquidating dividends, . . . from a corporation or any subsidiary corporation which is . . . taxable under this chapter upon its net income . . . if at the time of the receipt of such dividends the corporation receiving such dividends is the owner of stock in the corporation distributing such dividends:
 "a. Possessing at least 50 percent of the total combined voting power of all classes of stock entitled to vote; and
 "b. Constituting at least 50 percent of the total number of shares of all classes of stock other than classes of stock which are limited and preferred as to dividends."
Act No. 88-954, § 2, 1988 Ala. Acts (Second Extraordinary Session) 669, 677, 679-80 (applicable to all tax years or periods beginning after December 31, 1987). Sonat claims, in computing its net income for 1988 Alabama income-tax purposes, that it is entitled to deduct the dividend of $185,000,000 that it received in 1988 from its wholly owned subsidiary Sonat Offshore Drilling, Inc. ("SODI"). The Department contends that Sonat is not entitled to deduct this dividend and that the Court of Civil Appeals properly held that the trial court's allowance of Sonat's dividend deduction on the basis of § 40-18-35(a)(14) was erroneous.
The trial court's "Order and Opinion" explain the procedural history and facts of this case and the disposition in the trial court:
 "ORDER AND OPINION "This is a tax appeal involving the Alabama income tax imposed on foreign corporations by Ala. Code (1975) § 40-18-2 et seq. Sonat, Inc., a Delaware corporation (Taxpayer), filed this appeal pursuant to Ala. Code (1975) § 40-2A-7(b)(5)b., appealing from a final assessment of Alabama corporate income tax for calendar year 1988 in the amount of $12,153,702.00 entered by the Alabama Department of Revenue (the Department) on May 3, 1994. On May 26, 1994, the Taxpayer paid the amount of the assessment and the next day, May 27, 1994, timely filed a notice of appeal with the Clerk of this Court and with the Secretary of the Department. This case was tried ore tenus
on July 1 and 2, 1996.
 "ISSUE PRESENTED "The issue presented to this Court is whether the Taxpayer was entitled to deduct the dividend it received in 1988 from its wholly owned subsidiary, Sonat Offshore Drilling, Inc. (SODI), in computing its Alabama net income.
 "APPLICABLE STATUTES "I. "Ala. Code (1975) § 40-18-35(a)(14) provides that a corporation may deduct: [quoted, supra].
 "II. "Ala. Code (1975) § 40-18-2, specifically designates what entities are taxable:
 "`. . . Persons and subjects taxable under this chapter are:
"`. . . .
 "`(2) Every corporation domiciled in Alabama or licensed or qualified to transact business in Alabama; [or]
 "`(3) Every corporation doing business in Alabama deriving income from sources within Alabama, including income from property located in Alabama.'
 "III. "`§ 40-18-31. Imposition of income tax on corporations.
 "`A like tax is hereby levied and imposed upon every foreign corporation *Page 1213 
doing business in the state, which tax shall be assessed, collected and paid annually at the rate specified in this section, upon and with respect to the entire net income as herein defined, except as hereinafter provided, from property situated within this state and from business done and transacted within this state.'
 "IV.
"`§ 40-18-33. Net income of corporations defined.
 "`In the case of a corporation subject to the tax imposed by Section 40-18-31, the term `net income' means the gross income as defined in Section 40-18-34, less the deductions allowed by Section 40-18-35. . . .'
 "V. "`§ 40-18-34. Gross income of corporations defined.
 "`In the case of a foreign corporation, gross income includes only the gross income from sources within this state. . . .'
 "FINDINGS OF FACT AND CONCLUSIONS OF LAW "In accordance with the Pre-Trial Order entered on May 24, 1996, the parties submitted a detailed Stipulation of Facts. That Stipulation is part of the record in these proceedings and has been considered by the Court along with the evidence which was submitted at the trial of this case.
 "The Taxpayer is a Delaware corporation commercially domiciled in Birmingham, Alabama. During 1988 it was a holding company which acted through its subsidiary corporations in the production, storage, transmission and marketing of natural gas and oil field services. Sonat acquired complete ownership of SODI, a Delaware corporation, in 1978, and SODI immediately qualified to do business in Alabama. Each year since then it has remained qualified to do business in Alabama and has filed a foreign corporation franchise tax return and paid franchise tax to the State of Alabama.
 "The parties stipulated in open court and the evidence shows that SODI was both qualified to transact business in Alabama and was `doing business' in Alabama at all times relevant to this litigation.
 "SODI owned various components of Haworth modular office furniture or workstations which it used in its Houston, Texas offices. It replaced the Haworth units with Steelcase units and in 1981 SODI entered into a written lease whereby it leased a Haworth workstation to Southern Natural Gas Company (SNG), another Sonat subsidiary, for use in SNG's Birmingham offices. Since that time SNG has paid SODI $145 per month as rent for the leased workstation and each year SODI has filed an Alabama foreign corporation income tax return, paying Alabama income tax on the resulting net income. There is no dispute . . . that the equipment rental, after applicable depreciation deductions, was subject to Alabama income tax. The evidence shows that this is the only workstation which SODI has leased, although it does lease excess computer equipment.
 "SODI's Alabama income tax returns show that the nature of its business is `contract oil and gas drilling' although none of that business is performed in Alabama. The only income that SODI has reported as being taxable in Alabama is the income from the SODI/SNG workstation lease which was reported as non-business income.
 "In 1981, which was the year the SODI/SNG equipment lease was entered into, SODI paid its first dividend to Sonat and the annual dividends it has paid to its parent have been: *Page 1214 
"1. 1981 $19,545,261.00
"2. 1982 $16,000,000.00
"3. 1983 $25,000,000.00
"4. 1984 $18,578,081.00
"5. 1985 $735,246.00
"6. 1988 $185,000,000.00
 "In each of these years, including 1988, the year with which this litigation is concerned, Taxpayer has deducted these dividends from its gross income on its Alabama income tax returns.
 "The Department allowed the dividend deduction for 1982, 1983, 1984, and 1985, after requesting additional information concerning the deduction from the Taxpayer. The Department contends that the returns for those years were subject only to a `desk audit,' not a more complete `records audit.' The Department argues that the approval of the deduction for the prior years was the result of the Department's prior erroneous interpretation of § 40-[18]-35(a)(14). Nevertheless, neither the applicable Regulation (Reg. 810-3-35-.01(2)) regarding this section nor the `Instructions for the Preparation of State of Alabama Foreign Corporation Income Tax Returns' have been amended from 1988 through 1995 to reflect the new interpretation of the statute. The taxpayer acknowledges that the Department is not estopped from changing its position with regard to the propriety of the deduction of SODI dividends, but contends that the Department's prior approval of the deduction is entitled to be given great weight by this Court in addressing the issue presented in this litigation.
 "In July 1992, the Department conducted a tax audit of Sonat and seventeen of its subsidiary corporations for the calendar years 1988, 1989, and 1990. On August 25, 1993, the Department disallowed the deduction of the 1988 SODI dividend on the basis that SODI had `no nexus in Alabama.' Ultimately, the final assessment was made, the penalty was waived, and the Taxpayer paid the assessment, as stated above.
 "The Department no longer takes the position that SODI has no nexus with Alabama. In fact, the parties have stipulated that SODI was qualified to do business in Alabama and has been doing business in Alabama since 1978. It has also been judicially determined by this Court in other litigation (Sonat, Inc. v. Alabama Department of Revenue, CV-94-8568 NDR [see State Dep't of Revenue v. Sonat, Inc., 690 So.2d 412 (Ala.Civ.App. 1997)]) that SODI was doing business in Alabama from 1989 through 1993. Instead of contending that there is no nexus with Alabama, the Department takes the position with regard to the deduction that SODI's lease of the workstation to Sonat was a `sham' which had no practical economic effect other than to create an income tax benefit for the Taxpayer. The Department argues that the lease transaction should be ignored for the purpose of determining whether or not SODI is subject to Alabama income tax; if the lease is ineffective, SODI has no taxable income attributable to Alabama and, therefore, the dividend to Sonat is not deductible.
 "The Taxpayer has taken the position that the `dividends received' deduction is available to it because SODI was its wholly owned subsidiary which was `taxable under this chapter upon its net income, `as required by Ala. Code (1975) § 40-18-35(a)(14) and as provided in Ala. Code (1975) § 40-18-2(2) or (3), quoted above.
 "Ala. Code (1975) § 40-18-31 imposes an income tax on foreign corporations based on the `net income . . . from property located within this state and from business done and transacted within this state.' Thus if a foreign corporation is `taxable under this chapter,' the tax must be based on that corporation's net income and no other measure.
 "The Ala. Code (1975) § 40-18-33 further defines [a corporation's] `net income' to mean its `gross income as defined in Section 40-18-34, less the deductions allowed by Section 40-18-35.' [Section] 40-18-34 states: `In the case of a foreign corporation, gross income *Page 1215 
includes only the gross income from sources within this state. . . .'
 "The Department argues that the purpose of the deduction is to prevent subjecting income of a corporation and its subsidiary to taxation twice by the State of Alabama. Without the deduction, the State could subject corporate income twice; once when it is received by the subsidiary corporation and again as dividend income when it is received by the subsidiary's parent corporation. If the Taxpayer is allowed to deduct its 1988 SODI dividend from its gross income, then the amount of the dividend will escape taxation in Alabama both from SODI and Sonat. However, the evidence shows that if SODI's 1988 Alabama net income were computed as if SODI were commercially domiciled in Alabama and without regard to the geographical source of its income, SODI would have recognized a net loss of $67,615,628 for Alabama income tax purposes and would have owed no Alabama income tax. SODI would have had no Alabama net income to escape taxation.
 "The Department urges the Court to find that Sonat and SODI entered into the lease of the office workstation for the sole purpose of qualifying its dividends for the deduction under § 40-18-35(a)(14). The Department asks the Court to apply the federal tax doctrine of `substance over form' and to disregard the lease so as to deny Taxpayer the dividends received deduction. The Court agrees with the Department that it seems likely that the primary, if not the sole, purpose of the SODI/SNG lease was to qualify Sonat for the dividends received deduction. Even if this were the sole purpose of the lease, that does not make it a `sham' nor does it mean that the transaction should be disregarded. The Court finds that whatever the motivation, the lease was `real,' the workstation was located in Alabama, and the rent was paid. Under the unambiguous language of the applicable statutes, the Court has concluded that this was a legal method available to the Taxpayer to diminish its Alabama income tax liability.
 SUMMARY "SODI is a wholly owned subsidiary corporation of Sonat. SODI is taxable in Alabama upon its net income; that is, its gross income from sources within Alabama, less its legal deductions. SODI is qualified to do business in Alabama and does business in Alabama. It derives income from property located in Alabama. The dividends SODI pays its parent corporation, Sonat, are therefore deductible by Sonat under Ala. Code (1975) § 40-18-35(a)(14). This result is mandated by the unambiguous language of the statutes and the motivation of the Taxpayer in entering into the lease arrangement is not relevant. If this is not the intended result, then the legislature should amend the statute.
 "The best statement this Court has found of Alabama law concerning the right of a taxpayer to take advantage of legal methods of tax avoidance was written in 1938 and is still valid law:
 "`This tax payer has simply and only set itself up in conformity to the law and proposes to pay the taxes which the law says are payable when so set up. The State cannot complain when the tax payer resorts to a legal method available to him to compute his tax liability. The State is now saying to him that although you did what we said you could do with a certain result, that result is more beneficial to you than we intended. This court cannot change the law as thus made by our Constitution and statutes.
 "`Every corporation was created as a legal method of avoiding a personal liability of its stockholders, or to have the benefit of some other law enacted for the purpose of stimulating such a business enterprise. It seems that it is more to the discredit of the State to seek to withdraw such benefits after *Page 1216 
they have been accepted and acted upon, than to those who thus act in reliance upon their effective operation.'
State v. Pullman[-Standard Car] Mfg. Co., 235 Ala. 493,179 So. 541 (1938). . . .
 FINAL JUDGMENT
"It is therefore, ORDERED, ADJUDGED AND DECREED that
 "1. In computing its 1988 Alabama Income Tax, Taxpayer was entitled to deduct its 1988 SODI dividend as part of its § 40-18-35(a)(14) dividends received deduction;
 "2. The Department is ordered to set aside the Final Assessment and to refund to Taxpayer the asserted underpayment of Alabama income tax, together with interest thereon, as shown due in the Final Assessment, which was paid by Taxpayer, together with interest thereon according to law.
"3. Costs are taxed against the Department.
"DONE and ORDERED this the 30th day of October, 1996.
"/s/ J. SCOTT VOWELL
"CIRCUIT JUDGE"
The Court of Civil Appeals reviewed the trial court's judgment with no presumption of correctness:
 "Although the trial court heard ore tenus evidence before entering its judgment, the testimony received by the trial court was directed to the `combined reporting' issue. The trial court based its judgment concerning the application of § 40-18-35(a)(14) upon the parties' extensive factual stipulations. Construction of § 40-18-35(a)(14) is a legal question, and we review the trial court's judgment as to this issue with no presumption of correctness. See Sizemore v. Franco Distrib. Co., 594 So.2d 143, 147 (Ala.Civ.App. 1991) (rejecting presumption of correctness in tax refund action brought as original proceeding in circuit court.)"
Alabama Dep't of Revenue v. Sonat, Inc., 752 So.2d 1208. The Court of Civil Appeals agreed with the Department that the trial court's allowance of Sonat's dividend deduction on the basis of §40-18-35(a)(14) was erroneous, relying upon Sparks v. West PointMfg. Co., 274 Ala. 102, 145 So.2d 816 (1962):
 "Relying upon a literal construction of § 40-18-35(a)(14) in pari materia with §§ 40-18-2 and 40-18-2(3), Ala. Code 1975, Sonat argues that the dividends it received from SODI are deductible. Sonat contends that during 1988, SODI was qualified to do business in Alabama, did business in Alabama, and derived income from Alabama sources, and it concludes that SODI's net income was therefore `taxable' by Alabama in 1988.[*]
 "We do not believe that Sparks permits such a broad interpretation of the deduction set forth in § 40-18-35(a)(14). As Sparks
notes, the purpose of granting an Alabama income tax deduction for dividends paid by a subsidiary corporation is to prevent those amounts from being taxed more than once. It follows that this rationale is not implicated when as in Sparks the subsidiary corporation's earnings have never actually been taxed in Alabama. Here, SODI held precisely one income-producing corporate asset in Alabama in 1988 — its office furnishings lease to SNG, another Sonat affiliate. SODI received income of $432,550,913 in 1988, of which $432,549, 173 has not been subjected to Alabama income taxation, and SODI paid a total of $87 in income taxes to Alabama in 1988. This minimal payment of taxes does not even approach the level of a `double taxation' of SODI's overall earnings, and while it may fall within the letter of § 40-18-35(a)(14), it falls well outside its spirit and intent, which we must uphold above all else. See Bell v. Pritchard, 273 Ala. 289, 292, 139 So.2d 596, 598 (1962) (`The courts are not controlled by the literal meaning or language of a statute but by its spirit and intention.').
 "We conclude that SODI's de minimis
involvement in Alabama does not render SODI's net income `taxable' in Alabama under Sparks
so that Sonat, its corporate *Page 1217 
parent commercially domiciled in Alabama, may deduct SODI's $185,000,000 dividend payment. Our conclusion is only strengthened by our duty to construe strictly in favor of the taxing authority statutes that authorize deductions and exemptions from taxation. See, e.g., Community Action Agency v. State, 406 So.2d 890, 893-94 (Ala. 1981). We therefore agree with the Department that the trial court's allowance of Sonat's dividend deduction on the basis of § 40-18-35(a)(14) was erroneous.
". . . .
 "For the foregoing reasons, we reverse the judgment of the trial court and remand the cause for further proceedings.
 "[*]We note that State Dep't of Revenue v. Sonat, Inc., 690 So.2d 412
(Ala.Civ.App. 1997), involved SODI's corporate status in 1989 and succeeding years and does not preclude the Department's arguments in this case, which involve SODI's status in 1988 only."
§ 40-18-35(a)(14) authorizes a taxpayer parent corporation, in computing its Alabama net income, to deduct from its net income a dividend received from a wholly owned subsidiary corporation that is taxable under Title 40, Chapter 18, Code of Alabama 1975. In Sparks, this Court construed § 402(6), Title 51, Code of Alabama 1940, the predecessor to § 40-18-35(a)(14), as follows:
 "A domestic corporation, in computing its net income for state income tax purposes, is permitted to deduct the amounts received as dividends from another corporation `which is taxable under this title' upon its net income. If the dividend-paying corporation pays income tax on its income to the State of Alabama, then a domestic corporation which owns stock in that corporation may deduct amounts received as dividends on the stock so owned. It matters not whether the dividend-paying corporation is domestic or foreign if it pays income tax to the State of Alabama on its earnings. A foreign corporation which carries on its business in this state can be subject to the state income tax laws.
 "Where a domestic corporation owns stock in a subsidiary corporation, that is, a corporation of which another corporation owns as much as fifty percent of its capital stock, the said domestic corporation may deduct the dividends it receives from the subsidiary corporation, provided either the subsidiary corporation or its parent corporation pays state income taxes on the income of the subsidiary corporation."
Sparks, 274 Ala. at 104-05, 145 So.2d at 818. The pertinent language of § 40-18-35(a)(14) as it read in 1988 is substantially the same as the pertinent language of former § 402(6).
Sonat argues that under the plain language of § 40-18-35(a)(14) SODI is taxable upon its net income, and, thus, that Sonat is entitled to deduct the dividend it received from SODI.[2] Sonat also argues that the Court of Civil Appeals erred in construing § 40-18-35(a)(14) on the basis of the holding in Sparks. Sonat contends that that court's reliance uponSparks is misplaced because, Sonat argues, the statute has been significantly changed since Sparks was decided.[3]
However, we find *Page 1218 
no substantive difference between the language of § 40-18-35(a)(14) as it appeared in § 402(6) at the time of Sparks and as it existed in 1988 that would render the construction given in Sparks inapplicable.
Sonat may deduct the dividend it received from its subsidiary SODI if SODI is "taxable under this chapter [Chapter 18 of Title 40] upon its net income." Ala. Code 1975, § 40-18-35(a)(14) (1988 version). In relevant part, § 40-18-2, as it read in 1988 and as it reads now, provides that a corporation is "taxable under [Title 40, Chapter 18]" if it is qualified to transact business in Alabama or is doing business in Alabama. It is undisputed that SODI both was qualified to do business in Alabama and was doing business in Alabama in 1988.
The Department argues, however, that Sonat is not entitled to deduct the dividend received from SODI because SODI did not pay Alabama income tax on its "net income," as that term was construed in State v. Chesebrough-Ponds, Inc., 441 So.2d 598 (Ala. 1983), but paid Alabama income tax only on the income derived from the workstation lease and not also the income that generated the SODI dividend. Sonat argues that SODI, as a foreign corporation, is required, under the last sentence of § 40-18-34,[4] to include, in gross income, only its income from sources within Alabama. Sonat further argues that the income that generated the dividend came solely from liquidating distributions SODI received from two of its non-U.S. subsidiaries and that these distributions were exempt from Alabama income tax because they qualify for nonrecognition treatment under former Ala. Code 1975, § 40-18-8(i) (presently codified at § 40-18-8(h)).
At issue in Chesebrough-Ponds, Inc. was whether intercompany dividends received by a foreign parent corporation from subsidiaries not domiciled in Alabama should be included as "net income . . . from business done both within and without the state of Alabama" under § 40-18-35(3) (now § 40-18-35(a)(3)), which provided for a deduction from "net income," for purposes of computing Alabama income tax, an amount of total federal income tax paid by a foreign corporation doing business in Alabama. The amount of federal income tax deductible by a foreign corporation was determined by an apportionment ratio — the ratio that the net income from business done in Alabama bears to net income from business done both within and without Alabama. This Court interpreted "net income," for purposes of the phrase in §40-18-35(3), to mean "gross income, as set out in § 40-18-14, from whatever source both within and without the state."Chesebrough-Ponds, Inc., 441 So.2d at 604. This Court explained that its interpretation of the term "net income" to mean gross income derived from Alabama and non-Alabama sources was necessary to give effect to legislative intent and to avoid a "nonsensical result." Id. For if a foreign corporation's net income were limited to gross income derived from sources within Alabama, for purposes of the numerator in the apportionment ratio of §40-18-35(3), then, the Sparks Court said:
 "[T]he denominator [of the apportionment ratio], net income from business both within and without Alabama, would be reduced to only net income from business within Alabama; that is, the numerator and [the] denominator would be the same.
 "Every foreign corporation doing business in Alabama could deduct its entire federal tax liability, regardless of the percentage of business done in Alabama, *Page 1219 
because the apportionment ratio would be 100 percent. The legislature surely did not intend such a nonsensical result, and the only logical interpretation is to define `net income from business done both within and without Alabama' as gross income. . . ."
Id. Accordingly, this Court held that the intercompany dividends were includable in the parent corporation's gross income for the purpose of calculating the amount of federal income tax deductible under § 40-18-35(3), and, since the intercompany dividends were not deductible under § 40-18-35, they were includable in the parent corporation's net income. Id. at 603.
Thus, the interpretation of "net income" inChesebrough-Ponds, Inc., is necessarily limited to the particular language and purpose of § 40-18-35(3). That interpretation does not apply to the dividend deduction under § 40-18-35(a)(14), where there is no conflict between the requirement that the subsidiary be taxable upon its net income and the limitation given by the last sentence of § 40-18-34, which provides that in the case of a foreign corporation "gross income" includes only the gross income from Alabama sources.
The Department further argues that SODI's workstation lease was made for the purpose of qualifying Sonat for the deduction under § 40-18-35(a)(14) and thereby avoiding the payment of Alabama income tax by both Sonat and SODI. However, the motivation for the workstation lease does not affect the deductibility of the SODI dividend under § 40-18-35(a)(14). "A taxpayer may resort to any legal method available to it in an effort to diminish the amount of its tax liability." West PointPepperell, Inc. v. State Dep't of Revenue, 624 So.2d 579, 582
(Ala.Civ.App. 1992), writ quashed as improvidently granted,624 So.2d 582 (Ala. 1993) (citing State v. Pullman-Standard Car Mfg.Co., 235 Ala. 493, 179 So. 541 (1938)). Regardless of the purpose of the workstation lease, the fact remains that it was a bona fide lease — the workstation was situated in Alabama and rent was paid to SODI for its use.
Section 40-18-33 defines "net income" as gross income less any allowable deductions. Under § 40-18-34, the income that generated the dividend was not includable in SODI's 1988 gross income because it came from sources outside of Alabama, two of SODI's non-U.S. subsidiaries.[5] Consequently, the only income included in SODI's gross income was the rent it received from the workstation lease. This rental income also constituted SODI's net income. SODI's net income was subject to Alabama corporate income tax and SODI paid Alabama corporate income tax on that net income. Therefore, SODI was "taxable under this chapter upon its net income." Accordingly, Sonat is entitled to deduct the dividend it received from SODI, under Ala. Code 1975, §40-18-35(a)(14).
REVERSED AND REMANDED.
Hooper, C.J., and Maddox, Houston, Cook, See, Lyons, Brown, and Johnstone, JJ., concur.
[1] Section 40-18-35(a)(14) has been amended twice since 1988, once in 1990 and most recently in 1998, after this Court had granted certiorari review in this case. See Act No. 90-583, § 9, 1990 Ala. Acts 988 (effective for tax years or periods beginning after December 31, 1989); Act No. 98-502, § 1, 1998 Ala. Acts 1083 (effective for all tax years beginning after December 31, 1997).
[2] On appeal to the Court of Civil Appeals, Sonat argued alternatively that it was entitled to use "combined reporting" of income received by it and its direct and indirect subsidiaries for the tax year 1988 because, it said, it and its direct and indirect subsidiaries are a "unitary business." See Multistate Tax Compact, Ala. Code 1975, § 40-27-1 et seq. Sonat contends that this method of reporting would reduce its overall income-tax liability by $1,898,882. The trial court's judgment did not address the issue of combined reporting, and the Court of Civil Appeals declined to address the issue. We pretermit discussion of the issue, because of our ultimate conclusion that Sonat is entitled to deduct the dividend it received from SODI.
[3] Sonat reads Sparks as holding that a corporation is entitled to deduct the dividends it receives from its subsidiary only when the subsidiary has paid Alabama income tax on the income from which the dividends were derived. In Sparks, the commissioner of revenue argued for such a construction, but this Court did not so hold in that case. Instead, this Court construed the statute inSparks to mean that in computing its net income for Alabama income-tax purposes, a corporation is permitted to deduct dividends received from a subsidiary if the subsidiary pays Alabama income tax on its net income. See Sparks,274 Ala. at 104, 145 So.2d at 817-18.
[4] The last sentence of § 40-18-34, as it read in 1988, provided that "[i]n the case of a foreign corporation, gross income includes only the gross income from sources within this state." In 1998, this sentence was deleted. Act No. 98-502, 1998 Ala. Acts 1083, 1109.
[5] We need not address whether this income from SODI's non-U.S. subsidiaries, which was in the form of liquidating distributions, was exempt from Alabama corporate income tax under Ala. Code 1975, § 40-18-8(i). If the distributions were exempt, then they would, of course, be included neither in SODI's gross income nor in its net income.